**RECORD NOS. 12-1165(L); 12-1166; 12-1167**

In The

# United States Court of Appeals

### For The Third Circuit

# IN RE: BABY PRODUCTS ANTITRUST LITIGATION

## KEVIN YOUNG; CLARK HAMPE; ALLISON LEDERER

*Appellants*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————

### REPLY BRIEF OF OBJECTOR – APPELLANT KEVIN YOUNG

———————

**Theodore Frank**
**CENTER FOR CLASS**
  **ACTION FAIRNESS, LLC**
**1718 M Street, N.W., No. 236**
**Washington, DC  20036**
**(703) 203-3848**

*Counsel for Objector – Appellant Kevin Young*

# Table of Contents

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................ ii

Introduction ......................................................................................................... 1

Argument .............................................................................................................. 2

I.    The Settlement Notice Was Deficient Because It Did Not Contain a Clear and Accurate Description of the Standard for Making a Claim. ............... 2

    A.    The requirements for claims in the district court's opinion are materially different than the requirements in the settlement notice. .......................... 3

    B.    A settlement notice that dissuades class members from submitting legitimate claims by setting forth a stricter standard for recovery than the settlement provides for is deficient. ............... 6

II.    The Settlement Agreement's Protocol for *Cy Pres* Distribution Is Insufficient to Protect Class Members' Interests. ............................... 9

    A.    The district court's determination of the *cy pres* issues in this case is subject to *de novo* review. ............................ 10

    B.    The district court's settlement approval fails to provide adequate procedural protections for correct application of *cy pres*. .......................... 11

III.    The Settlement Impermissibly Rewards Third Parties Before Class Members With Sworn Claim Forms Are Fully Compensated. .......................... 15

IV.    Legal Standards for Awards to Class Counsel Should Require Proportionality. ...................................................................................... 19

    A.    The legal standard the district court used to determine the attorney award is subject to *de novo* review. ................... 19

    B.    Valuing *cy pres* funds at less than 100% for the purpose of the fee award incentivizes class counsel to seek settlements that prioritize the interests of class members above those of *cy pres* recipients. ................... 20

    C.    Attorneys' fees should be based on the class's actual recovery. ............. 23

Conclusion ......................................................................................................... 25

Combined Certifications .................................................................................... 26

# Table of Authorities

## Cases

*Adams v. Southern Farm Bureau Life Ins. Co.*,
   493 F.3d 1276 (11th Cir. 2007)..................................................................7-8

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................................19

*American Casualty Co. of Reading, Pennsylvania v. Continisio*,
   17 F.3d 62 (3d Cir. 1994) ............................................................................8

*B.H. v. Murphy*,
   984 F.2d 196 (7th Cir. 1993) ......................................................................14

*Boeing v. Van Gemert*,
   444 U.S. 472 (1980) ..................................................................................24

*Briggs v. United States*,
   2012 U.S. Dist. LEXIS 18278 (N.D. Cal. Feb. 14, 2012)...............................12-13

*Consol. Edison, Inc. v. Northeast Utils.*,
   332 F. Supp. 2d 639 (S.D.N.Y. 2004) ..........................................................4

*Doe v. Immigration & Customs Enforcement*,
   2006 U.S. Dist. LEXIS 28300 (S.D.N.Y. May 9, 2006)......................................4-5

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ..................................................................................19

*Gates v. Rohm & Haas Co.*,
   655 F.3d 255 (3d Cir. 2011) ......................................................................18

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ........................................................................9

*Greenfield v. Villager Industries, Inc.*,
   483 F.2d 824 (3d Cir. 1973) ........................................................................9

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) ................................................................20, 23

*Howe v. Townsend*,
    588 F.3d 24 (1st Cir. 2009) ................................................................................16-17

*In re American Express Merchants' Litig.*,
    667 F.3d 204 (2d Cir. 2012) ................................................................. 19

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ................................................................. 24

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ................................................................. 20

*In re Cendant Corp. Litig.*,
    No. 00-2185, 2001 U.S. App. LEXIS 8792 (3d Cir. May 9, 2001),
    *vacated upon rehearing en banc*,
    2001 U.S. App. LEXIS 12403 (3d Cir. Jun. 5, 2001) ................................................4

*In re Diet Drugs Prods. Liab. Litig.*,
    MDL No. 1203, 2011 U.S. Dist. LEXIS 25573 (E.D. Pa. Mar. 9, 2011) .............4

*In re Folding Carton Antitrust Litig.*,
    744 F.2d 1252 (7th Cir. 1984) ................................................................. 16

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ................................................................18-19

*In re Heartland Payment Systems, Inc.*,
    2012 U.S. Dist. LEXIS 37326 (S.D. Tex. Mar. 20, 2012) ................................21-22

*In re Holocaust Victim Assets Litig.*,
    424 F.3d 158 (2d Cir. 2005) ................................................................. 13

*In re Holocaust Victim Assets Litig.*,
    105 F. Supp. 2d 139 (E.D.N.Y. 2000) ................................................................13-14

*In re Holocaust Victim Assets Litig.*,
    302 F. Supp. 2d 89 (E.D.N.Y. 2004) ................................................................. 14

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F. 3d 305 (3d Cir. 2005) ................................................................. 10

*In re IMAX Secs. Litig.*,
    2012 U.S. Dist. LEXIS 86513 (S.D.N.Y. Jun. 20, 2012) ................................ 23

*In re Katrina Canal Breaches Litig.*,
  628 F.3d 185 (5th Cir. 2010) ....................................................................3, 6-7, 9

*In re Lupron Mktg. & Sales Practices Litig.*,
  677 F.3d 21 (1st Cir. 2012)....................................................................... 11-12, 14

*In re Prudential Ins. Co.*,
  148 F.3d 283 (3d Cir.1998) ..............................................................................20-22

*In re Wells Fargo Securities Litigation*,
  157 F.R.D. 467 (N.D. Cal. 1994)........................................................................ 23

*Kaufman v. Am. Express Travel Related Servs.*,
  2012 U.S. Dist. LEXIS 87751 (N.D. Ill. Jun. 25, 2012) ..........................................8

*Klier v. Elf Atochem N. Am. Inc.*,
  658 F.3d 468 (5th Cir. 2011) .....................................................................1, 13, 15, 18

*Lane v. Page*,
  2012 U.S. Dist. LEXIS 74273 (D.N.M. May 22, 2012) ........................................ 12

*Larson v. AT&T Mobility, Inc.*,
  2012 U.S. App. LEXIS 13292 (3d Cir. Jun. 29, 2012) ...........................................8

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) ........................................................................17-18

*Miller v. Fenton*,
  474 U.S. 104 (1985) ............................................................................................6

*Mounkes v. Indus. Claim Appeals Office of Colo.*,
  251 P.3d 485 (Colo. App. 2010) ........................................................................5

*New Castle County v. Nat'l Union Fire Ins. Co.*,
  243 F.3d 744 (3d Cir. 2001) ..............................................................................4

*North Am. Specialty Ins. Co. v. Correctional Med. Servs., Inc.*,
  527 F.3d 1033 (10th Cir. 2008)..........................................................................4

*Perry v. FleetBoston Financial Corp.*,
  229 F.R.D. 105 (E.D. Pa. 2005) ....................................................................21-22

*Powell v. Georgia-Pacific Corp.*,
    119 F.3d 703 (8th Cir. 1997) ................................................................. 16

*Pullman-Standard v. Swint*,
    456 U.S. 273 (1982) ............................................................................6

*Staton v. Boeing*,
    372 F.3d 938 (9th Cir. 2003) ............................................................... 21

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) *(en banc)* ................................................ 4, 9

*Thomson v. Metropolitan Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ..........................................................7-8

*Trombley v. Bank of Am. Corp.*,
    2012 U.S. Dist. LEXIS 63072 (D.R.I. May 4, 2012) .......................16-17

*Twigg v. Sears*,
    153 F.3d 1222 (11th Cir. 1998) ..........................................................8-9

*Walsh v. Great Atlantic & Pacific Tea Co.*,
    726 F.2d 956 (3d Cir. 1983) ................................................................ 18

*Wilson v. Airborne, Inc.*,
    2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) ................................17-18

## Rules and Statutes

28 U.S.C. § 1711 note ................................................................................... 24

Fed. R. Civ. Proc. 23 .............................................................................14, 24

Fed. R. Civ. Proc. 23(c)(2) ...........................................................................3

Fed. R. Civ. Proc. 23(e)(1) ...........................................................................3

Fed. R. Civ. Proc. 23(h) ..................................................................... 20, 23-25

## <u>Other Authorities</u>

Advisory Committee Notes to the 2003 Amendments to Rule 23 ......................3, 21-23

American Law Institute,
*Principles of the Law of Aggregate Litig.* § 3.07 (2010) ........................10-14, 17-18, 25

American Law Institute,
*Principles of the Law of Aggregate Litig.* § 3.07(b) (2010) .....................................16-17

American Law Institute,
*Principles of the Law of Aggregate Litig.* § 3.07(c) (2010) ............................................ 12

American Law Institute,
*Principles of the Law of Aggregate Litig.* § 3.07, *comment b* (2010) .............................. 18

American Law Institute,
*Principles of the Law of Aggregate Litig.* § 3.13 (2010) ................................................. 20

Federal Judicial Center,
*Manual for Complex Litigation (Fourth)* § 14.121 (2004) .......................................... 20

Federal Judicial Center,
*Manual for Complex Litigation (Fourth)* § 21.71 (2004) ............................................ 20

Federal Judicial Center,
*Manual for Complex Litigation (Fourth)* § 21.313 (2004) ..............................................6

Garner, Bryan A.,
*Black's Law Dictionary* (9th ed. 2009) .......................................................................4

Lahav, Alexandra,
*Fundamental Principles for Class Action Governance*,
37 IND. L. REV. 65 (2003) ...................................................................................... 13

*Third Circuit 2001 Task Force Report on Selection of Class Counsel,*
74 Temp. L. Rev. 689 (2001) ................................................................................ 20

## Introduction

Appellees' opposition to Kevin Young's appeal fails to refute any of the four independent grounds for reversal.

*First*, appellees defend a misleading claim form that dissuaded class members from seeking full compensation. But their arguments are wrong: they ask to apply the wrong legal standard; they ask this Court to apply an implausible and legally erroneous interpretation to the claim form; they ask this Court to believe that a December 2011 court order sufficiently notified the class of how to make a claim by an August 2011 deadline. The deficient notice must be remedied by a remand for renoticing.

*Second*, the notice did not apprise class members of all material terms of the settlement agreement because it failed to identify the proposed *cy pres* recipients. Again, appellees fail to contest the building blocks of Young's argument, and instead rely on the wrong legal standard. Again, the deficient notice must be remedied by a remand requiring notice and opportunity to object.

*Third*, the *cy pres* provision precludes approval of the settlement for another reason: it provides for *cy pres* distribution before all class members—including those whose claims are supported by sworn affidavit—are fully compensated. For this proposition, Young relied at length on *Klier v. Elf Atochem N. Am. Inc.*, 658 F.3d 468 (5th Cir. 2011). Remarkably, neither of the appellees' briefs mention *Klier* a single time. They do not defend the district court's erroneous reading of *Klier*. Nor do they argue that the Third Circuit should not adopt *Klier* as law. Instead, they repeat an argument that *Klier* rejected—that the parties agreement to limit compensation to $5

means that the class members are "fully compensated." The appellees have thus waived any argument that the settlement approval should not be reversed, as the correct legal standard requires rejection of a settlement that provides *cy pres* before all class members who have submitted claims are fully compensated.

*Finally*, Young gave several public policy grounds why the Third Circuit should adopt legal standards to help ensure that the percentage-of-recovery method of calculating fee awards fulfills its purpose of bringing fee awards in line with the value counsel's representation creates for the class, thus preventing situations like this case where the legal standard the district court used permitted an attorney award of over $14 million for a consumer class recovery about half of that. Plaintiffs' main defense of this injustice is to rely on the district court's application of the legal standard that Young argues needs change. Plaintiffs fail to provide a single reason to think that a *status quo* that permits such disproportionate recovery is a better choice than Young's proposed legal standards. If this Court adopts a standard that more effectively realizes its previously stated goals for the percentage-of-recovery approach, it is an independent ground for reversal and remand.

## Argument

## I.    The Settlement Notice Was Deficient Because It Did Not Contain a Clear and Accurate Description of the Standard for Making a Claim.

Courts must be especially vigilant in assuring that settlement notices are clear and accurate, and that they sufficiently apprise class members of all material terms of a settlement. The settlement notice in this case did not meet either of these standards

through its use of a claim form that unduly deterred class members from submitting claims that the district court found would be valid.

Plaintiffs contend that this Court should affirm the judgment's approval of the notice because the notice contains all of the elements set forth in Fed. R. Civ. Proc. 23(c)(2). PB27.[1] But Rule 23(c)(2) only applies to notice for *certification*. Young is objecting to the Rule 23(e)(1) *settlement* notice. If Rule 23(c)(2) requirements provided the only benchmark, 23(e)(1) settlement notice would not even have to describe the class benefits available to the class, the claims released, or the amount of attorneys' fees sought. This is plainly wrong. *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197-98 (5th Cir. 2010); *see also, e.g.,* Advisory Committee Notes to the 2003 Amendments to Rule 23 (distinguishing between certification notice and settlement notice). Plaintiffs' refusal to defend Rule 23(e)(1) notice under Rule 23(e)(1) standards is a negative pregnant: a tacit admission that this notice flunks the relevant test.

### A. The requirements for claims in the district court's opinion are materially different than the requirements in the settlement notice.

The claim form accompanying the settlement notice stated:

> To recover the maximum amount you can from the Settlement Fund for your purchases, attach documentation showing your purchase(s) of the products listed above. Acceptable proof may include receipts, cancelled checks, credit card statements, records from Toys "R" Us or Babies "R" Us, or other records that show you purchased the baby product and when the purchase was made.

---

[1] We abbreviate the Opening Brief as "OB," Plaintiffs' Brief as "PB," Defendants' Brief as "DB," and the Joint Appendix as "JA."

JA276. Under the canon of construction[2] of *ejusdem generis* (Latin for "of the same kind"), a photograph of the product did not constitute acceptable proof of purchase under the notice.

Pursuant to *ejusdem generis*, "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." Bryan A. Garner, *Black's Law Dictionary* 594 (9th ed. 2009). Under this canon, the phrase "other records" in the notice includes only records similar to receipts, cancelled checks, and credit card statements. *See New Castle County v. Nat'l Union Fire Ins. Co.*, 243 F.3d 744, 752 (3d Cir. 2001) (emphasizing the especial applicability of *ejusdem generis* in "the presence of the word 'other'"); *Doe v. Immigration & Customs Enforcement*, 2006 U.S. Dist. LEXIS 28300, at *7 (S.D.N.Y. May 9, 2006) (applying *ejusdem generis*, term "other records" in statute authorizing attorney general to collect "identification, criminal identification, crime and other records" did not authorize government to collect any and all types of records in National Crime

---

[2] Canons of construction are applicable to contract interpretation generally. *E.g., North Am. Specialty Ins. Co. v. Correctional Med. Servs., Inc.*, 527 F.3d 1033, 1042 (10th Cir. 2008) (applying *ejusdem generis* to determine what "other notice" meant in context of an ambiguous contract). More specifically, they are applicable tools for interpreting class action settlement agreements. *See, e.g., Consol. Edison, Inc. v. Northeast Utils.*, 332 F. Supp. 2d 639, 647 (S.D.N.Y. 2004); *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2011 U.S. Dist. LEXIS 25573, at *38-*39 (E.D. Pa. Mar. 9, 2011); *cf. also In re Cendant Corp. Litig.*, No. 00-2185, 2001 U.S. App. LEXIS 8792, at *31-*35 (3d Cir. May 9, 2001), *vacated upon rehearing en banc*, 2001 U.S. App. LEXIS 12403 (3d Cir. Jun. 5, 2001). This follows from the precept that "settlements agreements are creatures of private contract law." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 312 (3d Cir. 2011) (*en banc*).

Information Center database); *Mounkes v. Indus. Claim Appeals Office of Colo.*, 251 P.3d 485, 488 (Colo. App. 2010) (applying *ejusdem generis*, term "other reports and records" in statute denying unemployment compensation on grounds of an employee's "intentional falsification of expense accounts, inventories, or other records or reports" includes only those documents that, like expense accounts and inventories, relate directly to an employer's assets and liabilities).

Here, receipts, cancelled checks and credit card statements are all text-based, dated documents originating from third-party sources. A photograph of a product is not similar to those types of proof because it is not text-based, and is usually not dated nor from a third party. Construing "other records" to exclude product photos is further justified by the claim form's specific instruction that any "other record" submitted must reflect both the purchase of the baby product and the date of purchase. JA275-76.

Thus, appellees' claims that the claim form gave adequate notice to the class that a photograph would be sufficient "proof of purchase" to make a claim are unsustainable.

**B.    A settlement notice that dissuades class members from submitting legitimate claims by setting forth a stricter standard for recovery than the settlement provides for is deficient.[3]**

In upholding the fairness of the settlement, the district court stated that submission of a product photograph may be a sufficient basis to allow the claims administrator to award a claimant 20% of the product's average or estimated retail price, possibly trebled. JA51. As demonstrated above, this standard for recovery is materially different from the standard set forth in the notice. Thus, if the Court accepts Appellees' premise that, even absent the fairness hearing colloquy and reference to product photos in the opinion, the settlement agreement empowered the administrator to consider a product photo as acceptable proof of purchase (PB31; DB12), the notice was deficient because it did not contain a "clear, accurate description of the key terms of the settlement." *Manual for Complex Litigation (Fourth)* § 21.313 (2004); *accord Katrina Canal Breaches*, 628 F.3d at 197-98. Any other rule would permit parties to issue *inaccurate* notice that, like the notice here, misleads the class as to their rights—and such a rule would be abused by future settling parties to collude to reduce the number of claims made by class members.

_____

[3] Appellees argue that the adequacy of notice is reviewed for abuse of discretion. PB25-26; DB3. This is incorrect: the adequacy of notice is a mixed question of law and fact. A mixed question of law and fact occurs when the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule; they are reviewed *de novo. Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982); *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Although precedent on this specific question is mixed, ultimately, the standard of review is irrelevant because the notice in this case fails to pass muster even under an abuse of discretion standard.

Remarkably, Plaintiffs claim that the availability of the district court decision on the settlement website cures the defective claim form. PB32-33. The argument is ridiculous. The district court decision was not issued until **after** the claims deadline. Even in the implausible scenario where class members who receive a notice telling them that they are not eligible for more than $5 are willing to repeatedly check a settlement website just in case the rules change and they can ask for more money, a decision by the district court on December 21, 2011 (JA1-53), cannot reasonably apprise a class member of their opportunities to make a claim postmarked by August 1, 2011. JA254.

Additionally, the Court should reject Appellees' contention that the claim form's invitation to class members to contact the claims administrator with any questions concerning the claims process rehabilitates the defective notice in this case. PB32; DB11. Because the claim form set forth a standard for acceptable proof of purchase that, as a matter of law, did not include product photos, there was no reason for any class member who could provide only a product photo to contact the claims administrator to clarify the scope of what might be considered acceptable proof of purchase.[4] Settlement notice that does not accurately delineate the benefits to the class is deficient and grounds for reversal. *Katrina Canal Breaches*, 628 F.3d at 197-98.

---

[4] Moreover, even if class members had called, there is no record evidence that the claim administrator would have given class members accurate information about whether photographs would be sufficient to make a claim for more than $5.

Neither *Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276 (11th Cir. 2007) nor *Thomson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55 (S.D.N.Y. 2003) (both cited in PB32) is on point or persuasive. In *Adams*, the court's holding that the notice

*Twigg v. Sears*, 153 F.3d 1222 (11th Cir. 1998) is instructive. In *Twigg*, the plaintiff filed a class action alleging that Sears failed to perform a particular automotive service for more than 50% of customers who paid for it. *Id.* at 1223-24. Sears argued that the action was barred by a settlement, release and final judgment in an earlier class action. The plaintiff protested: the final notice in the earlier case stated that the complaint alleged that Sears had violated federal and state laws "by making unnecessary and/or improper repairs to its customers' automobiles," but that did not describe his claim, based on a failure to perform services that customers had paid for. *Id.* at 1228. The Eleventh Circuit agreed: notwithstanding normal principles of claim preclusion that would have barred Twigg's claim, due process required that the language of the deficient notice take priority, because the notice did not provide adequate warning that his claims would be precluded. *Id.* at 1226, 1228.

Similarly, the notice in this case effectively dissuaded class members with photographic proof of purchase from submitting their legitimate claims because it

---

constituted the best notice practicable under the circumstances related to the manner of notice, not the content of the notice. 493 F.3d at 1287. In *Thomson*, the notice did not omit material information regarding the terms of the class benefit. Moreover, where the settlement involves a claims process, notice needs to be scrutinized all the more rigorously. *See Kaufman v. Am. Express Travel Related Servs.*, 2012 U.S. Dist. LEXIS 87751 (N.D. Ill. Jun. 25, 2012) (concluding that notice was inadequate when amount claimed was disproportionately low relative to attorneys fees); *cf. also Larson v. AT&T Mobility, Inc.*, 2012 U.S. App. LEXIS 13292 at *32, *57 (3d Cir. Jun. 29, 2012) (remanding for reevaluation of notice where only 56,909 claim forms submitted in multi-million-member class); *American Casualty Co. of Reading, Pennsylvania v. Continisio*, 17 F.3d 62, 68-69 (3d Cir. 1994) (recognizing the heightened stringency of notice required under a claims-made insurance contract).

failed to inform them of the possibility of recovering a significantly greater amount (up to 60% of the product's estimated purchase price) if a product photo accompanied the sworn claim form. Under the best of circumstances, consumer class claim rates are low. *Cf. Sullivan*, 667 F.3d at 329 n.60 (3d Cir. 2011) (discussing low claims rates). They are certainly going to be even lower when class members are incorrectly told that filling out a four-page claim form can only net them $5 minus the cost of postage.

Plaintiffs protest that a notice need not be "unduly" specific (PB26); but that standard surely does not permit an inaccurate and misleading notice. Settlement notice must contain "all necessary information for any class member to become fully apprised and make any relevant decisions." *Katrina Canal Breaches*, 628 F.3d at 198. This notice did not. That inadequacy requires at least a remand for renoticing. OB18.[5]

## II.    The Settlement Agreement's Protocol for *Cy Pres* Distribution Is Insufficient to Protect Class Members' Interests.

It is remarkable what appellees' briefs do not contest about Young's *cy pres* arguments. They do not, and cannot, dispute that there are important public policy

---

[5] Appellees' defense of the notice spends considerable time on a strawman. Contrary to Appellees' assertions (PB33; DB11, 13), Young's argument does not depend on whether the notice informed class members that the administrator would have discretion to evaluate claims based on the quality of proof provided. Rather, Young contends that the notice is deficient because the strict standard of proof the claim form required to recover anything greater than $5 deterred class members from submitting legitimate claims. OB10. That the settlement itself might conceivably be interpreted to contradict the language of the claim form and notice does not excuse the failings of the claim form and notice. *Twigg, supra.*

reasons to constrain *cy pres* distribution, nor do they dispute that Section 3.07 of the American Law Institute's *Principles of the Law of Aggregate Litigation* (2010) ("*ALI Principles*") is a sound structure for evaluating *cy pres*. OB19-24. They do not, and cannot, dispute that class members have successfully objected to settlements with improper *cy pres* recipients, and that the identity of the proposed recipient is thus a material term of the settlement. OB26-28. They do not, and cannot, dispute that the class notice did not identify the *cy pres* recipients; nor do they dispute that the district court's settlement approval order establishes no mechanism to provide notice to the class of the *cy pres* recipients. OB26-27. Though Plaintiffs assert that "this Court need not adopt the *ALI Principles*" (PB20), they provide absolutely no public policy reason why this Court should not accept Young's invitation to do so.

### A.    The district court's determination of the *cy pres* issues in this case is subject to *de novo* review.

Young argues that this Court should require district courts administering *cy pres* to follow *ALI Principles* § 3.07, and the district court's failure to do so was legal error. "[W]hether an incorrect legal standard has been used is an issue of law to be reviewed *de novo*." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F. 3d 305, 312 (3d Cir. 2005).

Plaintiffs' purported precedents to the contrary are inapposite because they do not involve challenges to the district courts' choice of legal standard. In any event, the appellees concede that application of the wrong standard of law is a *per se* abuse of discretion. *Id.*

**B.** **The district court's settlement approval fails to provide adequate procedural protections for correct application of *cy pres*.**

Class members have a valid interest in the identity of *cy pres* recipients. OB27-29. Appellees do not challenge this proposition. Instead, they argue only that the settlement agreement's procedures for identifying and selecting those recipients sufficiently protect class members' interests—despite the fact that class members will receive no notice of the *cy pres* recipient identities, nor is there any procedure in place to preclude conflicts of interest. This is wrong.

The crux of the parties' defense of the settlement agreement's opaque process for choosing *cy pres* recipients is their reliance on the district court's promise to choose *cy pres* recipients that will serve the underlying interests of the class members, and on its discretion to reject the parties' recommendations. PB19; DB15. This defense is tautological: appellees do not attempt to harmonize the fact that the settlement agreement provides for a *cy pres* process unfettered by input from class members with the preference expressed in *ALI Principles* §3.07 for constraints on the *cy pres* remedy, and neither addresses Young's well-recognized judicial conflict of interest concerns other than to scoff at them as "conspiracy theories." OB22-23; PB30.

In support of their circular argument, Plaintiffs cite a number of cases where courts have approved *cy pres* recipients after the settlement has been approved. But these cases do not aid Plaintiffs' claims.

*In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21 (1st Cir. 2012), for example, supports Young's position. Latest in a lengthy line of appellate courts to endorse the *ALI Principles, see* OB24, the First Circuit expressed its concern that

district courts are given discretion by parties to decide on the distribution of *cy pres* funds and quoted with approval the recommendation in *ALI Principles* § 3.07(c) that "'the court, when feasible, *should require the parties to identify a recipient* whose interests reasonably approximate those being pursued by the class.' (emphasis added)." 677 F.3d at 38.[6] (The appellees' claims (PB20; DB15) that the settlement approval here "conforms with" the *ALI Principles* is thus entirely false. The settlement puts the ultimate selection of the recipient in the hands of the judge from a list provided by the parties, in violation of § 3.07(c).) The First Circuit also discussed the same judicial conflict of interest concerns that the Appellees pooh-pooh as "conspiracy theories." *Compare* 677 F.3d at 38 *and* OB22-23 *with* PB30. *See also Lane v. Page*, 2012 U.S. Dist. LEXIS 74273, at *141-*157 (D.N.M. May 22, 2012) (synthesizing problems with *cy pres*). Young does not dispute that there are other district courts that have failed to apply § 3.07, or have engaged in abusive *cy pres* practices; indeed, the commentary to § 3.07 cites disapprovingly several such cases. That Plaintiffs can point to other district courts that have acceded to *cy pres* abuse or shortcuts (PB29) does not mean that the Third Circuit should endorse such practices as a matter of law.[7]

---

[6] The First Circuit's affirmance should be viewed in light of the odd procedural posture in that case. Though *Lupron* was primed to reverse in virtue of the settlement's failure to inform the class about potential *cy pres* beneficiaries, the First Circuit ultimately affirmed because the objectors had waived any challenge to the underlying settlement agreement. 677 F.3d at 31. Because Young has made no such waiver, the reasons for *Lupron*'s affirmance are inapposite.

[7] Even so, Plaintiffs manage to cite a district court case that supports Young. *Briggs v. United States*, 2012 U.S. Dist. LEXIS 18278 (N.D. Cal. Feb. 14, 2012) (allowing a *cy pres* distribution only after making numerous attempts to locate and fully

Plaintiffs further argue that the identification of *cy pres* recipients should be delayed until the amount available for *cy pres* distribution can be determined because (1) the residual fund may be better split among recipients than distributed to a single organization; and (2) proposed recipient organizations may not exist by the time a distribution can be made. PB29-30. However, as a matter of policy, concerns relating to the ease of *cy pres* administration cannot outweigh class members' right to satisfactory notice. *See* Alexandra Lahav, *Fundamental Principles for Class Action Governance*, 37 IND. L. REV. 65, 118-125 (2003) (disclosure is "first and perhaps most important principle for class action governance"). Moreover, nothing prevents later reallocations if circumstances demand.

Finally, Defendants cite *In re Holocaust Victim Assets Litigation*, 424 F.3d 158 (2d Cir. 2005) to support their claim that "there is no reason to believe that the district court's order directing the cy pres distribution could not be appealed once it is entered." DB15-16. That case is inapposite because, there, the settlement agreement provided for a neutral special master to develop a proposed plan of allocation and distribution of the settlement fund, with direct class member input on the use of the *cy pres* remedy and the selection of any potential *cy pres* recipients, both before and after the special master's issuance of the proposed plan. *See In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 149-50 (E.D.N.Y. 2000). Unlike the procedure employed

---

compensate all class members and after selecting a recipient that the class already voluntarily funded). *Briggs* properly recognized that "[i]deally, all of the class fund residue would be paid to its rightful veteran owners—the outstanding class members." *Id* at *8-*9. *Accord Klier*, 658 F.3d at 474.

*Holocaust Victim Assets*, the settlement here provides no mechanism for class members to either provide input on the selection of *cy pres* recipients before class counsel and Defendants make their recommendations or receive notice of the identities of the potential recipients once they are recommended. *Contrast Holocaust Victim Assets*, 302 F. Supp. 2d 89, 91 (E.D.N.Y. 2004). Moreover, Defendants' suggestion (DB15) that the mere availability of *post hoc* appellate review of an order directing *cy pres* distribution is a sufficient procedural safeguard ignores the due process concerns embodied in Rule 23's various notice requirements.

More importantly, the fact that the district court *might*, in the future, correctly apply § 3.07 in the absence of an appropriate protocol does not mean that there is no legal error from the lack of safeguards or notice. It is convenient for Defendants to claim *now* that they would have acceded to a future hypothetical appeal of a future *cy pres* order when it is costless for them to assert so. But had Young had followed Defendants' suggestion that he forestall appealing until after the district court selected the *cy pres* recipients (without notice, at some time in the future), Defendants would surely have argued that Young waived the issue by failing to appeal the district court's approval of the protocol over his original objection. *E.g.*, *Lupron*, 677 F.3d at 31 (finding legal error in lower court's protocols and selection, but affirming because of waiver); *cf. also B.H. v. Murphy*, 984 F.2d 196 (7th Cir. 1993) (dismissing appeal for lack of jurisdiction on grounds of untimeliness).

III.   **The Settlement Impermissibly Rewards Third Parties Before Class Members With Sworn Claim Forms Are Fully Compensated.**

Young argued at length that the district court committed legal error by failing to correctly apply *Klier*, 658 F.3d 468. OB36-39; *see also* OB22, OB28, OB30, OB33). Remarkably, neither of the appellees' briefs mention *Klier* a single time. They do not defend the district court's erroneous reading of *Klier*. Nor do they argue that *Klier* is wrong or distinguishable, much less suggest that this Court should create a circuit split. This alone provides grounds for reversal of the settlement approval. *Klier* requires rejection of a settlement that prioritizes *cy pres* before all class members who have submitted claims are fully compensated.

Appellees' contention that class members whose claims are supported only by sworn claim forms are fully compensated by $5 distributions because the settlement agreement caps their recovery at that amount (PB22-24; DB16-17) ignores the fact that the right of *all* class members to compensation for Defendants' illegal conduct was created, in the first instance, by a statute that provides for an award of treble damages to successful plaintiffs. This statutory right is the basis for the settlement agreement's provisions for a *pro rata* "enhancement" of up to three times the baseline damages award available to class members who can provide "documents" (JA285) to support their claims.[8]

---

[8] For ease of reference, we refer to the two groups of claimants in each subclass whose claim forms have "proof of purchase" as "Group 1" and "Group 2," while those who submit only sworn claim forms as "Group 3" class members. *See generally* JA4-5.

As Young noted (OB29), if the question were solely how to distribute amongst competing class members a fund that would otherwise be exhausted, it would be reasonable to prefer Group 1 and 2 class members over Group 3 class members.[9] This premise is consistent with *ALI Principles* §3.07(b): "If the settlement class involves individual distributions to class members and funds remain after distribution…, the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair." *Accord Trombley v. Bank of Am.*

---

[9] Thus, Plaintiffs' contention that the issue is "whether the defendants may compensate Class Members without any proof of purchase at $5.00 in exchange for a full release" (PB24, 34-35, 3) misconstrues Young's argument, which in no way precludes an *initial* cap of $5 recovery by Group 3.

In this case, there is no dispute that Group 3 members suffered injuries of the same type and extent as members of Groups 1 and 2. Accordingly, they are no less entitled than members of the latter groups to full recovery of their damages before any remainder is distributed via *cy pres*.

Moreover, because the settlement undercompensates Group 3 class members, *Howe v. Townsend*, 588 F.3d 24, 34 (1st Cir. 2009) (cited in PB22) is inapposite because in that case class members were fully compensated before *cy pres* distributions were made. There is no indication in *In re Folding Carton Antitrust Litig.*, 744 F.2d 1252, 1253-54 (7th Cir. 1984) that the class members (who the court held had no right to the unclaimed funds) had not been fully compensated. Finally, *Powell v. Georgia-Pacific Corp.*, 119 F.3d 703 (8th Cir. 1997) is distinguishable because, there, the court found that it would be extremely difficult to distribute the funds *pro rata*; here, noone argues that further distribution to Group 3 is difficult, much less infeasible; the process would be the same as distribution to Group 2, except that Group 2 would have priority over Group 3.

*Corp.*, 2012 U.S. Dist. LEXIS 63072, at *11 (D.R.I. May 4, 2012). When there is a settlement fund surplus with no reversion to the defendant, and no intra-class conflict prejudicing the recovery of class members with higher-quality claims, there is no reason not to fully compensate the class members with lower-quality claims. The principle that "funds generated through the aggregate prosecution of divisible claims are presumptively the property of class members" (*ALI Principles*, §3.07, cmt. (b); *accord Klier*, 658 F.3d at 475) is not restricted by the quality of the proof available.

Thus, Plaintiffs' assertion that, here, "persons with proof that they purchased the products at issue will be paid *treble damages* before any money is distributed through *cy pres*" (PB23; emphasis in original)[10] is incorrect. Group 3 members have proof that they purchased the products at issue. The fact that their proof (sworn claim forms) may be less persuasive than the contemporaneous written (or after-the-fact photographic) documentation of purchase that can put class members into Groups 1 or 2 is irrelevant to whether Group 3 has been fully compensated. Plaintiffs' citation to *Howe* (PB18) thus supports Young: in *Howe*, the Court approved the *cy pres* distribution because every claimant had received treble damages. 588 F.3d at 34. If, as in *Howe*, Group 3 had received the same treble damages that Group 2 had received, Young would not be complaining that *cy pres* was improperly prioritized over class members.[11]

_____

[10] The brief refers to *Howe*, but this appears to be a typo: the cite is to this case's Joint Appendix.

[11] *Wilson v. Airborne, Inc.*, 2008 WL 3854963, at *9 (C.D. Cal. Aug. 13, 2008) is inapposite because the objection was not based on improper prioritization of *cy pres* distribution. Similarly, *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001), is

Defendants' claim that the issue of whether the district court erred in approving a settlement that prefers *cy pres* recipients' interests to those of class members would not exist if the settlement provided for no distribution to Group 3 class members (DB17, fn.8) is mistaken. A settlement that froze out class members that failed to retain a ten-year-old receipt would be presumptively unfair; if nothing else, it would mean that the individualized issues of proof of class membership preclude a single-class certification and thus class settlement. *E.g., Gates v. Rohm & Haas Co.,* 655 F.3d 255, 261 (3d Cir. 2011).

Plaintiffs' discussion of the role of district courts in approving class settlements in general or of the compromises made in negotiating a settlement (PB21) is irrelevant: the fact that district courts cannot unilaterally modify settlement terms does not relieve them of their obligation to ensure that the fund distribution is fair and reasonable as to all participants in the class. A distribution that prioritizes third-party *cy pres* recipients over undercompensated class members is unfair. *ALI Principles,* §3.07; *Klier,* 658 F.3d at 477 ("district court must act for the benefit of the class as a whole"). That the district court could not rectify that unfairness with a blue pencil meant it committed legal error by failing to deny settlement approval.

Finally, Defendants' assertion that the appropriate remedy for Group 3 class members who are dissatisfied with the limited recovery available to them is to opt out of the settlement (DB17) misses the point. Class members' ability to opt out of a settlement does not absolve the district court of its obligation to "ensure that the fund

---

inapposite because Plaintiffs do not contend that Group 3 members are unable to establish class membership. Both predate the *ALI Principles.*

distribution is fair and reasonable as to all participants in the fund." *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 809 (3d Cir. 1995). The point of a class action is to aggregate claims that cannot be vindicated individually. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *In re American Express Merchants' Litig.*, 667 F.3d 204, 214 (2d Cir. 2012). Opt-outs are valuable rights in cases where an individual has a sizable claim, like a large shareholder in a securities class action. But an opt-out in a consumer antitrust settlement that denies liability while waiving the class's claims is all but worthless, because the individual class member opting out has no chance of prosecuting the case individually: "Economic reality dictates that petitioner's suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). Courts cannot rely on the opt-out right to cure class action settlement unfairness in a case with claims of this size.

## IV.   Legal Standards for Awards to Class Counsel Should Require Proportionality.

### A.   The legal standard the district court used to determine the attorney award is subject to *de novo* review.

Although Plaintiffs argue that the district court's award of attorneys' fees in this case should be reviewed for abuse of discretion (PB35-36), they concede that the standards governing the calculation of attorneys' fee awards are legal questions subject to plenary review. (*Id.* at 36). Here, Young argues that, as a matter of law: (1) *cy pres* awards should be valued at less than 100% when applying the "percentage of

recovery" method of awarding attorneys' fees in common fund cases; and (2) an attorneys' fee award that exceeds the pecuniary recovery actually received by class members in a class action for economic damages is facially unreasonable under Rule 23(h). These are questions of what legal standard should be applied to the determination of fee applications, and is thus subject to plenary review.

### B. Discounting the value of *cy pres* funds for the purpose of the fee award incentivizes class counsel to seek settlements that prioritize the interests of class members above those of *cy pres* recipients.

The adoption of a rule valuing *cy pres* funds at less than 100% for the purpose of calculating a fee award using the percentage-of-recovery method does not require this Court to scrap the *Gunter*[12]/*Prudential*[13] factors. Rather, such a rule would supplement those factors. The proposed rule is also consistent with both this Court's repeated recognition that, when class counsel is compensated using the percentage of recovery method, the fee must be tailored to the realities of the particular case (*see In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001); *Manual for Complex Litigation (Fourth)* § 14.121 (citing *Third Circuit 2001 Task Force Report on Selection of Class Counsel*, 74 Temp. L. Rev. 689, 705 (2001))) and the *ALI Principles*.[14]

---

[12] *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000).

[13] *In re Prudential Ins. Co. America Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998).

[14] The *Manual for Complex Litigation*'s statement that, "[i]n cases involving a claims procedure…the fee awards should be based only on the benefits actually delivered" (§21.71) rebuts Plaintiffs' claim that the *Manual* supports the district court's methodology in this case.

Because Young is not rearguing the *Prudential* factors, Plaintiffs' extensive defense of the district court's application of those factors (PB40-42) is irrelevant. The lodestar cross-check (PB47-50) is also irrelevant. A cross-check does not trump the overriding goal of the percentage-of-recovery method: bringing fee awards in line with the value produced for the class. OB42 (citing authorities). A lodestar cross-check is a ceiling to prevent windfalls, not a floor to distort percentage of recovery. *Cendant*, 264 F.3d at 285.

Plaintiffs take particular pains to attempt to undermine *In re Prudential Ins. Co. America Sales Practices Litig.*, 148 F.3d 283, 338 (3d Cir. 1998); *In re Heartland Payment Systems, Inc.*, 2012 U.S. Dist. LEXIS 37326 (S.D. Tex. Mar. 20, 2012); *Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105 (E.D. Pa. 2005); and the Advisory Committee Notes to the 2003 Amendments to Rule 23. (*See* PB42, 43, 51-53). Those attempts are unavailing.

In *Prudential*, this Court observed that "numerous courts have concluded that the amount of benefit conferred logically is the appropriate benchmark against which a reasonable common fund fee charge should be assessed." 148 F.3d 283, 338 (3d Cir. 1998). Plaintiffs attempts to blunt this holding by implying that it should be limited to cases in which some of the benefit the class received resulted from efforts other than those of class counsel. Such a narrow reading of *Prudential* is unjustified.

Plaintiffs' analysis of *Perry* is wrong. While *Perry* ultimately based fees on lodestar, it indisputably performed a percentage-of-recovery analysis as a cross-check,

and in that context refused to consider *any portion* of the *cy pres* donation in valuing the settlement relief. *Id.* at 123 n.9.[15]

Plaintiffs' criticism of *Heartland* (PB51-53) is also invalid. While *Heartland* acknowledged that many courts value *cy pres* amounts the same as money recovered by class members, it observed that the courts that apply a 100% valuation have not explained their grounds for doing so. *Heartland* concluded by discounting the *cy pres* fund 50% for the purpose of determining attorneys' fees in applying its Circuit's version of the *Prudential* factors. 2012 U.S. Dist. LEXIS 37326, at *105-*106 and n.30.

Finally, Plaintiffs' selective quotation from the Advisory Committee Notes to the 2003 Amendments to Rule 23 (PB42) is misleading. The Committee's recognition that, in some class actions, the monetary relief obtained is not the sole determinant of an appropriate attorneys' fee award comes in the context of a discussion of how to determine an award in cases involving declaratory or injunctive relief, neither of which is involved here.

To appropriately incentivize class counsel to comply with their fiduciary duty to put the class first, a dollar of *cy pres* should not be valued the same as a dollar of class recovery when calculating fees.

---

15 Similarly, that the district court in *Staton v. Boeing*, 372 F.3d 938 (9th Cir. 2003) did not employ either the percentage or lodestar method is irrelevant to the Ninth Circuit's holding that the value to individual class members of benefits deriving from injunctive relief may be included as part of the value of a common fund only in the unusual instance where the value of such benefits can be accurately ascertained.

## C.    Attorneys' fees should be based on the class's actual recovery.

Perhaps one reason why the claim forms in this case were so shoddy as to deter legitimate claims (Section I, above), is because the settlement was structured to make the class attorneys indifferent about the class's rights: whether there was one claim or one million claims, the attorneys would be entitled to request the same recovery. This is wrong. A rule that bases fees on actual recovery by the class would properly align incentives of class counsel to ensure the claims process maximizes relief to their clients, rather than to their favorite *cy pres* charity.

Young argued that the award to class counsel is facially unreasonable under Rule 23(h) because the $14 million awarded to class counsel is disproportionate to the (at best) $8.1 million[16] that the class will recover. OB44-47. Plaintiffs' opposition, bottomed on their assertion that Young is actually arguing that class counsel's purported[17] recovery of 33.3% of the gross settlement proceeds is unreasonable

---

[16] This figure is not, as Defendants assert (DB2), Young's invention: it is the district court's estimate of the maximum class recovery. JA32. As Young noted, this $8.1 million figure is, if anything, a substantial overestimate, as it assumes every claim is in Group 1 and in the subclass with the most expensive product. OB7.

[17] Plaintiffs contend that Young improperly combined attorneys' fees and expenses. PB37-39. As Young notes (OB45 n.12), it is appropriate to evaluate the reasonableness of the award to class counsel by comparing the combined attorneys' fees and expenses to the amount actually recovered by the class; both are governed by Rule 23(h). *Cf., e.g., In re Wells Fargo Secs. Litig.*, 157 F.R.D. 467, 470-71 (N.D. Cal. 1994); *In re IMAX Secs. Litig.*, 2012 U.S. Dist. LEXIS 86513, at *46 (S.D.N.Y. Jun. 20, 2012). However, even assuming *arguendo* that fees should be treated differently than items like "secretarial overtime" in determining Rule 23(h) reasonableness, the $11,833,333.33 fee award here still gives class counsel more than 146% of what the class actually received.

because it exceeds a 25% benchmark (PB44-46), is thus inapt. The problem here is that class counsel recovered about twice as much money as their putative clients. Plaintiffs' attempt to distinguish *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) (PB46-47) is unavailing. *Bluetooth* condemns all disproportionate fee awards as a sign of self-dealing, not just the ones involving $0 settlements. 654 F.3d at 947.

*Bluetooth*'s focus on what the class "actually received" demonstrates that plaintiffs' reliance on *Boeing v. Van Gemert*, 444 U.S. 472 (1980), is misplaced. *Boeing* was superseded by the 2003 amendments to Rule 23, which created Rule 23(h), and the 2005 Class Action Fairness Act. 28 U.S.C. § 1711 note (a)(3)(A) (condemning settlements where "counsel are awarded large fees, while leaving class members with… awards of little or no value."). These changes reflect common-sense intuitions: attorneys' fees should be tied directly to the value of what clients actually receive, and permitting a class member to fill out a claim form in order to receive a check simply is not equivalent to sending that class member a check directly. It is therefore not appropriate to award fees based on a speculative, maximized estimate of potential claims.

Thus, Young asks this Court to establish legal standards under Rule 23(h) that vindicate this Circuit's "percentage-of-the-recovery" approach: *cy pres* going to third parties should not be treated as equal to dollars going to class members; nor should it be a routine application of Rule 23(h) for attorneys to collect more than their clients.

## Conclusion

Thus, this Court should reverse the settlement approval. At a minimum, it should remand with instructions to give the class notice of the expanded claims procedure and proposed *cy pres* recipients; calculate class counsel recovery under Rule 23(h) guided by what the class "actually received"; and follow the *ALI Principles*' restrictions on *cy pres* awards.

Dated:  July 5, 2012                     Respectfully submitted,

                                         */s/ Theodore H. Frank*
                                         Theodore H. Frank
                                         CENTER FOR CLASS ACTION
                                         FAIRNESS LLC
                                         1718 M Street NW, No. 236
                                         Washington, DC 20036
                                         Telephone:  (703) 203-3848
                                         Email:  tfrank@gmail.com

                                         **Counsel for Objector/Appellant
                                         Kevin Young**

*Of Counsel*
        Lisa Solomon

## Combined Certifications

### 1.    Certification of Bar Membership

I hereby certify that I, Theodore H. Frank, counsel for Kevin Young, am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit as of May 5, 2010.

### 2.    Certification of Service

I hereby certify that, on this 5th day of July, 2012, I electronically filed the foregoing brief on the electronic docketing system for the Court of Appeals for the Third Circuit, thereby effecting service on counsel of record under L.A.R. 113.4.

I hereby certify that, on this 5th day of July, 2012, I caused ten true and correct copies of the foregoing brief to be mailed to: Office of the Clerk, United States Court of Appeals for the Third Circuit, 21400 United States Courthouse, 601 Market Street, Philadelphia, PA 19106.

I hereby certify that, on this 5th day of July, 2012, I caused this foregoing document to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to the following registered CM/ECF users (all counsel has consented to electronic service):

Christopher Bandas, *Objector Counsel-Appellant*
William Caldes, *Class Counsel-Appellee*
Carolyn Feeney, *Defendant Counsel-Appellee*
Elizabeth A. Fegan, *Class Counsel-Appellee*
Michael Hahn, *Defendant Counsel-Appellee*
David Martin, *Defendant Counsel-Appellee*
Neil McDonell, *Defendant Counsel-Appellee*
Kendall Millard, *Defendant Counsel-Appellee*
James H. Price, *Objector Counsel-Appellant*
Melissa Rubenstein, *Defendant Counsel-Appellee*
Eugene Spector, *Class Counsel-Appellee*
Jeffrey Spector, *Class Counsel-Appellee*
Mark Weyman, *Defendant Counsel-Appellee*
Margaret Zwisler, *Defendant Counsel-Appellee*

### 3.     Certification of Word Count

I hereby certify that this brief complies with the page limitation of Fed. R. App. Proc. 32(a)(7)(B) because this brief contains 6,990 words in the main body of the brief, excluding the parts of the brief exempted by Fed. R. App. Proc. 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the typestyle requirements of Fed. R. App. Proc. 32(a)(6) because this brief has been prepared in proportionally-spaced typeface using Microsoft Word 2010 in 14-point Garamond font.

### 4.     Certification of Identical Compliance of Briefs

Pursuant to L.A.R. 31.1(c), I hereby certify that the electronic and hard copies of this brief in the instant matter contain identical text.

### 5.     Certification of Virus Check

Pursuant to L.A.R. 31.1(c), I hereby certify that a virus check of the electronic .PDF version of the brief was performed using McAfee SecurityCenter software, and the .PDF file was found to be virus free.

Dated:  July 5, 2012

Respectfully submitted,

*/s/ Theodore H. Frank*
Theodore H. Frank
CENTER FOR CLASS ACTION FAIRNESS LLC
1718 M Street NW
No. 23-6
Washington, DC 20036
Telephone:  (703) 203-3848
Email:  tedfrank@gmail.com

**Counsel for Objector/Appellant Young**