PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

Nos. 12-1165, 12-1166 & 12-1167

———————————

IN RE  BABY PRODUCTS ANTITRUST LITIGATION

Kevin Young, Appellant (No. 12-1165)

Clark Hampe, Appellant (No. 12-1166)

Allison Lederer, Appellant (No. 12-1167)

———————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action Nos. 2-06-cv-00242 / 2-09-cv-06151)
District Judge: Honorable Anita B. Brody

———————————

Argued September 19, 2012

Before AMBRO, GREENAWAY, JR.,
and O'MALLEY, [*] <u>Circuit Judges</u>

———————————

[*] Honorable Kathleen M. O'Malley, United States Court of
Appeals for the Federal Circuit, sitting by designation.

(Opinion filed:  February 19, 2013)

Christopher M. Arfaa, Esquire
Littleton Joyce Ughetta Park & Kelly
150 North Radnor Chester Road
Suite F-200
Radnor, PA 19087

Theodore H. Frank, Esquire (**Argued**)
Center for Class Action Fairness
1718 M. Street, N.W., No. 236
Washington, DC 20036

Daniel Greenberg, Esquire
55 Fontenay Circle
Little Rock, AK  72223

       Counsel for Appellant
       Kevin Young

Christopher A. Bandas, Esquire
Bandas Law Firm
500 North Shoreline, Suite 1020
Corpus Christie, TX 78471

       Counsel for Appellant
       Clark Hampe

James H. Price, Esquire
Lacy, Price & Wagner
249 North Peters Road, Suite 101
Knoxville, TN 37923

Counsel for Appellant
Allison Lederer

Theodore B. Bell, Esquire
Mary Jane E. Fait, Esquire
Wolf, Haldenstein, Adler, Freeman & Herz
55 West Monroe Street, Suite 1111
Chicago, IL 60603

Steve W. Berman, Esquire
George W. Sampson, Esquire
Anthony D. Shapiro, Esquire
Ivy A. Tabbara, Esquire
Hagens Berman Sobol Shapiro
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101

Thomas H. Burt, Esquire
Fred T. Isquith, Esquire
Wolf, Haldenstein, Adler, Freeman & Herz
270 Madison Avenue
New York, NY 10016

William G. Caldes, Esquire
Eugene A. Spector, Esquire (**Argued**)
Jeffrey L. Spector, Esquire
Spector, Roseman, Kodroff & Willis
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Elizabeth A. Fegan, Esquire
Hagens Berman Sobol Shaprio
1144 West Lake Street, Suite 400

Oak Park, IL 60301

       Counsel for Appellee
       Carol M. McDonough

Harry H. Rimm, Esquire
Mark L. Weyman, Esquire (**Argued**)
Reed Smith
599 Lexington Avenue
New York, NY 10022

Melissa I. Rubenstein, Esquire
Reed Smith
1650 Market Street
2500 One Liberty Place
Philadelphia, PA  19103

       Counsel for Appellees
       Toys R Us Inc., Babies R Us Inc.,
       Toys R Us Delaware Inc.

Neil E. McDonell, Esquire
Dorsey & Whitney
51 West 52nd Street
New York, NY  10019

       Counsel for Appellee
       Baby Bjorn AB

Alexander Maltas, Esquire
Marguerite M. Sullivan, Esquire
Edward M. Williamson, Esquire
Margaret M. Zwisler, Esquire

Latham & Watkins
555 11th Street, N.W., Suite 1000
Washington, DC 20004

Samuel W. Silver, Esquire
Schnader Harrison Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, PA 19103

       Counsel for Appellee
       Britax Child Safety Inc.

Michael J. Hahn, Esquire
Lowenstein Sandler
65 Livingston Avenue
Roseland, NJ 07068

       Counsel for Appellee
       Kids Line Inc.

Carolyn H. Feeney, Esquire
George G. Gordon, Esquire
Joseph A. Tate, Esquire
Dechert
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104

       Counsel for Appellee
       Medela Inc.

Kendall Millard, Esquire
Barnes & Thornburg

11 South Meridian Street, Suite 1313
Indianapolis, IN 46204

      Counsel for Appellee
      Peg Perego USA Inc.

David R. Martin, Esquire
Suite 3116
5200 Peachtree Road
Atlanta, GA 30341

Isaac J. Mitrani, Esquire
Mitrani Rynor & Adamsky
One Southeast Third Avenue
2200 Suntrust International Center
Miami, FL 33131

      Counsel for Appellee
      Regal Lager Inc.

---

OPINION  OF  THE  COURT

---

AMBRO, <u>Circuit Judge</u>

      We address for the first time the use of *cy pres* distributions in class action settlements.[1]  "The term 'cy pres'

---

[1] Although Judge Weis briefly discussed the desirability of *cy pres* distributions in a partial concurrence and dissent, the majority in that case did not address the issue.  *See In re Pet*

is derived from the Norman French expression *cy pres comme possible*, which means 'as near as possible.'" *Democratic Cent. Comm. v. Washington Metro. Area Transit Comm'n*, 84 F.3d 451, 455 n.1 (D.C. Cir. 1996).[2]  When class actions are resolved through settlement, it may be difficult to distribute the entire settlement fund, after paying attorneys' fees and costs along with fund administration expenses, directly to its intended beneficiaries—the class members.  Money may remain unclaimed if class members cannot be located, decline to file claims, have died, or the parties have overestimated the amount projected for distribution for some other reason.  It may also be economically or administratively infeasible to distribute funds to class members if, for example, the cost of distributing individually to all class members exceeds the amount to be distributed.  In these circumstances, courts have permitted the parties to distribute to a nonparty (or nonparties) the excess settlement funds for their next best use—a charitable purpose reasonably approximating the interests pursued by the class.

---

*Food Prods. Liab. Litig.*, 629 F.3d 333, 363–64 (3d Cir. 2010) (Weis, J., concurring in part and dissenting in part).

[2] The *cy pres* doctrine originated in trusts-and-estates law as a rule of construction used to preserve testamentary charitable gifts that otherwise would fail.  "When it becomes impossible to carry out the charitable gift as the testator intended, the doctrine allows the 'next best' use of the funds to satisfy the testator's intent 'as near as possible.'" *Id.* (quoting Natalie A. DeJarlais, Note, *The Consumer Trust Fund: A Cy Pres Solution to Undistributed Funds in Consumer Class Actions*, 38 Hastings L.J. 729, 730 (1987)).

The *cy pres* award in this case was part of a settlement of consolidated antitrust class actions brought by several named plaintiffs (collectively, the "Plaintiffs") on behalf of consumers against retailers Toys "R" Us, Inc. and Babies "R" Us, Inc. along with several baby product manufacturers (the retailers and manufacturers are collectively referred to as the "Defendants"). Pursuant to that settlement, which was approved by the District Court, all settlement funds remaining after attorneys' fees and costs are paid, and individual distributions are made to claimants, would go to one or more charitable organizations proposed by the parties and selected by the Court. The Court indicated it would ensure the funds are used for a purpose underlying the interests of the class.

Kevin Young, an unnamed class member who objected to the settlement before the District Court, raises the following three issues relating to the *cy pres* provision on appeal.[3]

(1) The District Court erred in approving a settlement that would result in funds being distributed to one or more *cy*

---

[3] Three of the objectors to the settlement—Young, Clark Hampe, and Allison Lederer—have appealed, but only Young has filed briefing. Because the underlying suits alleged violations of the Sherman and Clayton Acts, the District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 & 1337.

Our Court has appellate jurisdiction because this is a timely filed appeal from a final judgment. 28 U.S.C § 1291. Although the objectors were not parties to the underlying action, as class members who timely objected to the approval of the settlement at a fairness hearing, they are permitted to appeal the settlement without the need to intervene formally. *See Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002).

*pres* recipients in lieu of fully compensating class members for their losses.

(2) The Court should have discounted the value of the *cy pres* distribution for purposes of calculating attorneys' fees, which were awarded on a percentage-of-recovery basis.

(3) The class notice was deficient because it did not identify the recipients that would receive the *cy pres* distributions.

Young's overarching concern, and ours as well, is that the settlement has resulted in a troubling and, according to counsel for the parties, surprising allocation of the settlement fund. *Cy pres* distributions, while in our view permissible, are inferior to direct distributions to the class because they only imperfectly serve the purpose of the underlying causes of action—to compensate class members. Though the parties contemplated that excess funds would be distributed to charity after the bulk of the settlement fund was distributed to class members through an exhaustive claims process, it appears the actual allocation will be just the opposite. Defendants paid $35,500,000 into a settlement fund. About $14,000,000 will go to class counsel in attorneys' fees and expenses. Of the remainder, it is expected that roughly $3,000,000 will be distributed to class members, while the rest—approximately $18,500,000 less administrative expenses—will be distributed to one or more *cy pres* recipients.

We vacate the District Court's approval of the settlement because the Court was apparently unaware of the amount of the fund that would be distributed to *cy pres* beneficiaries rather than being distributed directly to the class. On remand, the Court should consider whether this or any alternative settlement provides sufficient direct benefit to the

class before giving its approval. We also vacate the attorneys' fees award because its approval was based on the terms of a settlement that are no longer in effect and may be altered on remand. Addressing Young's argument that attorneys' fees should be reduced, we confirm that courts need to consider the level of direct benefit provided to the class in calculating attorneys' fees. We leave it to the District Court's discretion to assess what effect, if any, that consideration should have on any future fee award in this case. As there was no error in the notice provided to the class, we do not reverse on that basis.

## I.    Background

This appeal follows from two antitrust class actions consolidated for settlement purposes. In 2006, Carol McDonough and other named plaintiffs filed a suit in the United States District Court for the Eastern District of Pennsylvania alleging that Defendants conspired to set a price floor for the sale of certain baby products, causing consumers to pay increased prices for these products. In 2009, class certification of that resale-price-maintenance suit was granted and several subclasses were created based on the products purchased and the timeframe of those purchases. Because the District Court did not permit the subclass periods to extend beyond the date when the case was filed, Ariel Elliott and other named plaintiffs subsequently filed a related putative class action. In 2011, the parties in those actions signed an agreement consolidating and settling their lawsuits.

The Court initially approved the settlement in January 2011. Notice was sent to putative class members informing them of their right to submit a claim, opt out, or object. In July 2011, the Court held a fairness hearing to consider any objections made by class members. The deadline for submitting claims expired in August 2011. Approximately

four months later, the Court approved the settlement and a fund allocation plan proposed by the parties.  It also granted class counsel's fee request for $11,833,333.33, representing one-third of the gross settlement amount, and $2,229,775.60 for out-of-pocket litigation expenses.

Per the settlement, Defendants deposited $35,500,000 into a settlement fund.  After payment of attorneys' fees and expenses, the remainder of the fund was slated for distribution to the settlement class.[4]  In order to receive a cash distribution, a claimant must demonstrate that he or she is a member of a settlement subclass by submitting a valid, sworn, and timely claim form.

Claimants are entitled to different levels of compensation based on the evidence submitted.  Those who submit valid documentary proof of purchase and of the actual price paid for a product are eligible to receive 20% of the actual purchase price of each product purchased.  Those who do not submit documentary proof of the actual purchase price but submit a valid proof of purchase are eligible to receive 20% of the estimated retail price, as calculated by class counsel, of each product purchased.[5]  (The 20% figure

---

[4] The settlement class is comprised of all persons and entities who bought certain baby products from Babies "R" Us and Toys "R" Us during prescribed time periods dating back to 1999.

[5] Under the allocation plan, valid documentary proof "may include but is not limited to receipts, cancelled checks, credit card statements, records from Toys 'R' Us or Babies 'R' Us, or other records that show the Authorized Claimant purchased the Settlement Product(s) from Toys 'R' Us or Babies 'R' Us, and when the purchase was made."

slightly exceeds the 18% average overcharge an independent economics expert hired by class counsel estimated class members would have paid for a baby product covered by the settlement.)  Those who do not submit any proof of purchase are eligible to receive a payment of $5.

Claims in the first two categories of compensation— those receiving 20% of the actual or estimated purchase price—are subject to *pro rata* enhancements.  The settlement class is divided into eight different settlement subclasses, based on the baby product purchased.  If the claims awarded do not exhaust the funds allocated to a particular settlement subclass, these awards are enhanced by up to three times the baseline figure, consistent with Section 4 of the Clayton Act, 15 U.S.C. § 15, which entitles private plaintiffs to receive treble damages for violations of the antitrust laws.

The settlement terms establish an order of priority for distributing any remaining funds.  Funds in a subclass after the initial distribution will be redistributed first to the other settlement classes until all claims are fully satisfied in accordance with the compensation categories and accompanying enhancements described.  If funds remain after that redistribution and the payment of administrative costs, they will be donated to one or more charitable organizations—the *cy pres* recipients.  Under the terms of the settlement, Plaintiffs and Defendants are each permitted to recommend up to two not-for-profit organizations to receive the award.  The District Court, however, is entrusted with the responsibility of selecting one or more *cy pres* recipients that will receive distributions.

We do not know the exact allocation of the funds that will result from the current settlement.  At the time of the fairness hearing in July 2011, class members had submitted approximately 41,000 claims.  Because the deadline for

submissions was not until August 2011, more claims likely were submitted.  In response to a concern regarding whether the $35,500,000 in the settlement fund would be sufficient to pay counsel fees and expenses while compensating class members under the terms of the agreement, the District Court estimated that at most—assuming 45,000 claims, each entitling the claimant to three times 20% of a $300 baby product—$8,100,000 would be distributed to class members. It appears, however, that far less will actually be distributed to them.  At oral argument, class and defense counsel informed us that, largely because the vast majority of the claims fell into the third category of compensation entitling claimants to $5 payouts, class members will receive only about $3,000,000 through the claims process.

## II.    *Cy pres*

We have not ruled on whether class action settlements may include *cy pres* provisions.  Courts generally have approved *cy pres* distributions in two circumstances.

> First, many courts allow a settlement that directs funds to a third party when funds are left over after all individual claims have been satisfied. . . .  Second, some courts allow a settlement to require a payment only to a third party, that is, to provide no recovery at all directly to class members.

American Law Institute ("ALI"), Principles of the Law of Aggregate Litig. § 3.07, comment a (2010).  We deal with the former here.

The use of *cy pres* recipients to dispose of excess funds—first suggested in a student comment in 1972, *see* Stewart R. Shepherd, Comment, *Damage Distribution in Class Actions: The Cy Pres Remedy*, 39 U. Chi. L. Rev. 448 (1972)—has accelerated rapidly in recent years.

> From 1974 through 2000, federal courts granted or approved cy pres awards to third party charities in thirty class actions, or an average of approximately once per year. [From] 2001 [through 2008], federal courts granted or approved cy pres awards in sixty-five class actions, or an average of roughly eight per year.

Martin H. Redish et al., *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617, 653 (2010).

This is unsurprising.  When excess settlement funds remain after claimants have received the distribution they are entitled to under the terms of the settlement agreement, there are three principal options for distributing the remaining funds—reversion to the defendant, escheat to the state, or distribution of the funds *cy pres*.[6]  Among these options, *cy pres* distributions have benefits over the alternative choices. Reversion to the defendant risks undermining the deterrent effect of class actions by rewarding defendants for the failure

---

[6] As we discuss directly below, the parties may also agree to make further distributions to class members (*e.g.*, expand eligibility for payments and/or lower the requirements for making a successful claim).

of class members to collect their share of the settlement. Escheat to the state preserves the deterrent effect of class actions, but it benefits the community at large rather than those harmed by the defendant's conduct. *Cy pres* distributions also preserve the deterrent effect, but (at least theoretically) more closely tailor the distribution to the interests of class members, including those absent members who have not received individual distributions.

We join other courts of appeals in holding that a district court does not abuse its discretion by approving a class action settlement agreement that includes a *cy pres* component directing the distribution of excess settlement funds to a third party to be used for a purpose related to the class injury.[7] *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819–20 (9th Cir. 2012); *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 33–36 (1st Cir. 2009); *see also* 4 Herbert B. Newberg et al., Newberg on Class Actions § 11:20 (4th ed. 2012); ALI, *supra*, § 3.07. "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). That approval is warranted when the

---

[7] In contrast with *cy pres* distributions agreed to by the parties as part of a settlement, courts of appeals have greeted with more skepticism *cy pres* distributions imposed by trial courts over the objections of the parties. *See, e.g.*, *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 479 (5th Cir. 2011) (*en banc*) ("Where the terms of a settlement agreement are sufficiently clear, or, more accurately, insufficient to overcome the presumption that the settlement provides for further distribution to class members, there is no occasion for charitable gifts, and *cy pres* must remain offstage." (footnote omitted)). We do not deal with that situation here.

court finds that the settlement, taken as a whole, is "fair, reasonable, and adequate" from the perspective of the class. Fed. R. Civ. P. 23(e)(2). Inclusion of a *cy pres* provision by itself does not render a settlement unfair, unreasonable, or inadequate.

We caution, however, that direct distributions to the class are preferred over *cy pres* distributions. The private causes of action aggregated in this class action—as in many others—were created by Congress to allow plaintiffs to recover compensatory damages for their injuries. *See* 15 U.S.C. § 15. *Cy pres* distributions imperfectly serve that purpose by substituting for that direct compensation an indirect benefit that is at best attenuated and at worse illusory.[8] *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781,

---

[8] Federal Rule of Civil Procedure 23, under which this class settlement was approved, is a procedural mechanism permitting the aggregation of claims in federal court. Pursuant to the Rules Enabling Act, it does not and cannot alter the underlying substantive law being asserted. 28 U.S.C. § 2072. Because "a district court's certification of a settlement simply recognizes the parties' deliberate decision to bind themselves according to mutually agreed-upon terms without engaging in any substantive adjudication of the underlying causes of action," *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 312 (3d Cir. 2011), we do not believe the inclusion of a *cy pres* provision in a settlement runs counter to the Rules Enabling Act. *But see Klier*, 658 F.3d at 481 (Jones, J., concurring) (suggesting that *cy pres* distributions arguably violate the Rules Enabling Act and present Article III problems); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 362 (3d Cir. 2010) (Weis, J., concurring and dissenting) (suggesting that excess funds should escheat to the state

784–85 (7th Cir. 2004). *Cy pres* distributions also present a potential conflict of interest between class counsel and their clients because the inclusion of a *cy pres* distribution may increase a settlement fund, and with it attorneys' fees, without increasing the direct benefit to the class. Where a court fears counsel is conflicted, it should subject the settlement to increased scrutiny.[9]

To account for the inferiority of *cy pres* distributions, the ALI has published guidelines limiting them to instances where further individual distributions are infeasible. Those guidelines provide in pertinent part:

> If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual

---

instead of being distributed to *cy pres* recipients). The Rules Enabling Act, however, provides further support for the proposition that courts should favor class settlements that provide direct compensation to the class through individual distributions.

[9] As discussed in the next section, *see infra* Part III, it may also be appropriate to decrease attorneys' fees in those circumstances.

> distributions economically viable
> or other specific reasons exist that
> would make such further
> distributions impossible or unfair.

ALI, *supra*, § 3.07(b). The ALI does not explain further what "other specific reasons" would justify a *cy pres* distribution.

Although we agree with the ALI that *cy pres* distributions are most appropriate where further individual distributions are economically infeasible, we decline to hold that *cy pres* distributions are only appropriate in this context. Settlements are private contracts reflecting negotiated compromises. *Sullivan*, 667 F.3d at 312. The role of a district court is not to determine whether the settlement is the fairest possible resolution—a task particularly ill-advised given that the likelihood of success at trial (on which all settlements are based) can only be estimated imperfectly. The Court must determine whether the compromises reflected in the settlement—including those terms relating to the allocation of settlement funds—are fair, reasonable, and adequate when considered from the perspective of the class as a whole.

To assess whether a settlement containing a *cy pres* provision satisfies this requirement, courts should employ the same framework developed for assessing other aspects of class action settlements. In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), we set out nine factors that courts should consider when deciding whether to approve a settlement. *Id.* at 157. In *In re Prudential Insurance Co. of America Sales Practices Litigation*, 148 F.3d 283 (3d Cir. 1998), we expanded that analysis to include what may be termed the *Prudential* considerations. *Id.* at 323. Unlike the *Girsh* factors, each of which the district court must consider before approving a

class settlement, the *Prudential* considerations are just that, prudential. They are permissive and non-exhaustive, "illustrat[ing] . . . [the] additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." *See In re Pet Food*, 629 F.3d at 350.

We add today that one of the additional inquiries for a thorough analysis of settlement terms is the degree of direct benefit provided to the class. In making this determination, a district court may consider, among other things, the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards. Barring sufficient justification, *cy pres* awards should generally represent a small percentage of total settlement funds.

We note that this inquiry needs to be, as much as possible, practical and not abstract. If "the parties have not" on their own initiative "supplied the information needed" to make the necessary findings, the court should "affirmatively seek out such information." *In re Pet Food*, 629 F.3d at 351 (citation omitted). Making these findings may also require a court to withhold final approval of a settlement until the actual distribution of funds can be estimated with reasonable accuracy. Alternatively, a court may urge the parties to implement a settlement structure that attempts to maintain an appropriate balance between payments to the class and *cy pres* awards. For instance, it could condition approval of a settlement on the inclusion of a mechanism for additional payouts to individual class members if the number of claimants turns out to be insufficient to deplete a significant portion of the total settlement fund.

Turning to the particular *cy pres* distribution in this case, Young asserts that the District Court failed to fulfill its oversight responsibility by approving a class action settlement containing a *cy pres* provision that permits the distribution of funds to a third party without first fully compensating all claimants. As noted above, the settlement directs a *cy pres* award after claimants receive cash distributions via a three-tiered compensation structure: claimants with valid documentary proof of purchase and purchase price receive up to three times 20% of the actual price of the product they purchased; claimants with valid documentary proof of purchase receive up to three times 20% of the estimated price; and claimants without any valid proof receive a $5 payout. Young does not object to the 20% figure or argue that the first two categories of claimants will be undercompensated. Instead, he asserts that the *cy pres* award is inappropriate because the third category of claimants—those receiving a $5 payout regardless of price of the product they purchased—will not be fully compensated for their losses.

We review a district court's decision to approve a settlement for abuse of discretion. *Girsh*, 521 F.2d at 156 & n.7. "'An appellate court may find an abuse of discretion where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *In re Prudential*, 148 F.3d at 299 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 783 (3d Cir. 1995)). Mindful that we are dealing with a settlement, we remain hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). "Because class actions are rife with potential conflicts of interest between class counsel and class members," however, "district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlement in order

to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi*, 356 F.3d at 785 (collecting cases); *see also In re Gen. Motors*, 55 F.3d at 785.

We vacate the District Court's orders approving the settlement and the fund allocation plan because it did not have the factual basis necessary to determine whether the settlement was fair to the entire class. Most importantly, it did not know the amount of compensation that will be distributed directly to the class. Removing attorneys' fees and expenses, approximately $21,500,000 (less costs of administration) of the settlement were designated for the class, but only around $3,000,000 of that amount actually will be distributed to class members, with the remainder going to *cy pres* recipients after expenses relating to the administration of the fund are paid.

Though the claims period had concluded, counsel did not provide this information to the Court, preventing it from properly assessing whether the settlement was in the best interest of the class as a whole. The Court approved the $5 cap on compensation for those without documentary proof of their claims in part because it believed the standard of proof required to receive a higher award was "fairly low." *McDonough v. Toys "R" Us, Inc.*, 834 F. Supp. 2d 329, 352 (E.D. Pa. 2011). According to counsel, however, the vast majority of claimants have not submitted documentary proof entitling them to a greater award, casting doubt on this assumption. Similarly, the Court found the $5 cap was justified by the need to "avoid encouraging fraud." *Id.* While without doubt this is a good goal, we do not believe the Court could have reasonably assessed whether these concerns justified the cap without knowing the resulting allocation of funds. Other means of preventing fraud could have been explored.

Based on the information we now have, we remand for the Court to reconsider the fairness of the settlement. The parties may wish to alter its terms on remand to provide greater direct benefit to the class, such as by increasing the $5 payment or lowering the evidentiary bar for receiving a higher award.[10] After allowing them that opportunity, we ask the Court to make the factual findings necessary to evaluate whether the settlement provides sufficient direct benefit to the class.

We place no absolute requirement on the amount of direct compensation the third category of claimants must receive. Courts of appeals have approved *cy pres* distributions where all class members submitting claims have already been fully compensated for their damages by prior distributions. *See, e.g.*, *In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 34–35 (1st Cir. 2012). A *cy pres* distribution is considered appropriate in that circumstance because additional individual distributions would "overcompensat[e] claimant class members at the expense of absent class members." *Id.* at 35 (citing *In re Pharm. Indus.*, 588 F.3d at 34–36). We agree, but do not limit *cy pres* distributions to instances where all claimants have received 100% of their estimated damages. As the parties explain, the $5 payment to claimants in the third category can be seen as compensation for a full release of their claims rather than as an attempt to compensate them for their damages. Indeed, provided the class as a whole received sufficient direct benefit, it would not have been unreasonable to eliminate the $5 category altogether and require class members to submit documentary proof to receive any award. We do not intend to

---

[10] Class members should be notified of any material alterations to the settlement and permitted to object to them before the Court approves the settlement.

raise the bar for obtaining approval of a class action settlement simply because it includes a *cy pres* provision.

What we are concerned with in this case is that the Court approved the settlement without being made aware that almost all claimants would fall into the $5 compensation category, resulting in minimal (and we doubt sufficient) compensation going directly to class members. The baby products at issue cost up to $300, resulting in damages, at the estimated 18% overcharge, of over $50. Combined with the possibility of treble damages, we doubt that this is the type of small claims case where the potential awards were necessarily insufficient to motivate class members to file claims. We think it more likely that many class members did not submit claims because they lacked the documentary proof necessary to receive the higher awards contemplated, and the $5 award they could receive left them apathetic. This casts doubt on whether agreeing to a settlement with such a restrictive claims process was in the best interest of the class. If Defendants decline to raise the $5 cap or alter the documentary proof requirement on remand, the Court will need to determine whether the class received sufficient direct benefit to justify the settlement as fair, reasonable, and adequate. Before doing so, though, it must have the requisite factual basis.

## III.    Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts generally use one of two methods for assessing the reasonableness of attorneys' fees—a percentage-of-recovery method or a lodestar method. The former "resembles a contingent fee in that it awards counsel a variable percentage of the amount recovered for the class." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab.*

*Litig.*, 55 F.3d 768, 819 n.38 (3d Cir. 1995). The latter "calculates fees by multiplying the number of hours expended by some hourly rate appropriate for the region and for the experience of the lawyer." *Id.* at 819 n.37. Whichever method is chosen, "we have noted previously that 'it is sensible for a court to use a second method of fee approval to cross check' its initial fee calculation." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 333 (3d Cir. 1998) (quoting *In re Gen. Motors*, 55 F.3d at 820).

The District Court—as is "generally favored in cases involving a common fund," *id.*—awarded fees on a percentage-of-recovery basis. We have identified a number of factors to aid courts in evaluating the reasonableness of percentage fee awards. *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); *In re Prudential*, 148 F.3d at 336–40). Applying these factors, the Court approved counsel's requested fees of $11,833,333.33 (one-third of the entire settlement fund) as reasonable. In addition to using a percentage of recovery method, the Court applied a lodestar method crosscheck. It calculated, at counsel's regular billing rates, a total lodestar of $31,839,355.33, representing a negative lodestar multiplier of .37 (*i.e.*, class counsel's fee request equaled 37 percent of what they would have received at their regular billing rates).

We vacate the District Court's order awarding fees and costs because it is based on a settlement that is no longer in effect and may be altered on remand. Although in this circumstance we need not (and do not) resolve whether the awarded fees were reasonable, we note that the Court did not address an issue raised by Young we believe worthy of discussion. He objected to the requested fees on the ground that the Court should not consider the *cy pres* award as a class benefit for purposes of calculating attorneys' fees. On appeal,

Young has softened his approach, asking instead that we require districts courts to discount—rather than to ignore entirely—the value of *cy pres* distributions for purposes of calculating percentage awards. *See* Young Reply Br. at 22. Take, for example, a settlement fund whereby $20,000,000 will be distributed for *cy pres* purposes. Under Young's approach, if a court believes that the *cy pres* award provides half the benefit of direct distributions, it should value the portion of the settlement being distributed *cy pres* at $10,000,000 for purposes of calculating attorneys' fees as a percentage of the recovery.

Although the Supreme Court has not addressed whether attorneys' fees should be reduced when a portion of a settlement fund is distributed *cy pres*, it has confronted essentially the same issue when calculating percentage fee awards against a settlement fund that will partially revert to the defendant. In *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), the Supreme Court confirmed the permissibility of using the entire fund as the appropriate benchmark, at least where each class member needed only to prove his or her membership in the injured class to receive a distribution.[11] *Id.* at 480–81. *Boeing*, however, did not address whether a district court abuses its discretion by taking the converse approach, basing attorneys' fees on only the amount of the fund claimed by class members.

Courts of appeals have taken a similar approach when they have addressed this issue in the *cy pres* context. In *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301

---

[11]    In *Boeing*, the fund was created following the determination of plaintiffs' claims rather than pursuant to a settlement. *Id.* at 474–75. We do not believe this significantly alters the analysis.

(9th Cir. 1990), the District Court had calculated attorneys' fees as a percentage of the total fund even though unclaimed funds would be distributed to *cy pres* recipients. The Court of Appeals for the Ninth Circuit, relying on *Boeing*, held that the District Court did not abuse its discretion in using the total fund amount as its benchmark. *Id.* at 1311. In *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007), the Court of Appeals for the Second Circuit reviewed a percentage-fee award based on funds claimed by class members rather than on the entire settlement fund, some of which would ultimately be distributed to a *cy pres* recipient. Finding that the District Court abused its discretion, the Circuit Court held that the percentage fee should have been calculated on the basis of the total fees made available because "[t]he entire [settlement] [f]und, and not some portion thereof, [was] created through the efforts of counsel." *Id.* at 437. It noted, however, that a court may within its discretion decrease the percentage of the fund awarded (rather than the benchmark value of the settlement) in appropriate circumstances to prevent attorneys from being improperly enriched. *Id.*

We think it unwise to impose, as Young requests, a rule requiring district courts to discount attorneys' fees when a portion of an award will be distributed *cy pres*.[12] There are a variety of reasons that settlement funds may remain even after an exhaustive claims process—including if the class members' individual damages are simply too small to motivate them to submit claims. Class counsel should not be

---

[12] Young also asks us to hold that fee awards exceeding the amount directly distributed to class members are presumptively unreasonable. For substantially similar reasons, we do not adopt such a rule.

penalized for these or other legitimate reasons unrelated to the quality of representation they provided. Nor do we want to discourage counsel from filing class actions in cases where few claims are likely to be made but the deterrent effect of the class action is equally valuable.

We appreciate, however, that awarding attorneys' fees based on the entire settlement amount rather than individual distributions creates a potential conflict of interest between absent class members and their counsel. "Arrangements such as [these] . . . decouple class counsel's financial incentives from those of the class. . . . They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class." *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1224 (2000) (denial of *cert.*) (O'Connor, J.) (discussing a percentage fee calculated against the entire settlement fund even though a significant portion would revert to the defendant). Class members are not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should not be either.

Where a district court has reason to believe that counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class, we therefore think it appropriate for the court to decrease the fee award. *See Masters*, 473 F.3d at 437; *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (stating that although the entire common fund was the appropriate benchmark for attorneys' fees, the percentage of the fund awarded may be decreased "to account for any unusual circumstances"); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1077 (S.D. Tex. 2012) ("The class benefit conferred by cy pres payments is indirect and attenuated. That makes it

inappropriate to value cy pres on a dollar-for-dollar basis."); *cf. Dennis v. Kellogg Co.*, 697 F.3d 858, 867–68 (9th Cir. 2012) (vacating an attorneys' fees award because the District Court did not sufficiently scrutinize the valuation of a *cy pres* distribution consisting of "$5.5. million worth" of food, and noting that "[t]his issue is particularly critical with a cy pres product settlement that has a tenuous relationship to the class allegedly damaged by the conduct in question").[13]

For the reasons discussed, our approach is case by case, providing courts discretion to determine whether to decrease attorneys' fees where a portion of a fund will be distributed *cy pres*. The ALI has adopted a similar approach. According to its Principles of the Law of Aggregate Litigation, "[a]ttorneys' fees in class actions, whether by litigated judgment or by settlement, should be based on both the actual value of the judgment or settlement to the class and the value of cy pres awards . . . ." ALI, Principles of the Law of Aggregate Litig. § 3.13. The comment to that section clarifies, however, that "because *cy pres* payments . . . only indirectly benefit the class, the court need not give such payments the same full value for purposes of setting attorneys' fees as would be given to direct recoveries by the class." *Id.* § 3.13, comment a.

---

[13] We note that, in enacting the Class Action Fairness Act, Congress required courts to base attorneys' fees in coupon (as opposed to cash) settlements "on the value to class members of the coupons that are redeemed" rather than on the face value of the coupons. 28 U.S.C. § 1712(a). Although we do not deal with a coupon settlement, this statutory provision further supports the proposition that the actual benefit provided to the class is an important consideration when determining attorneys' fees.

In this case, class counsel, and not their client, may be the foremost beneficiaries of the settlement. Some class actions are based on so-called negative value claims, that is, claims that could not be brought on an individual basis because the transaction costs of bringing an individual action exceed the potential relief. While aggregating these claims in a class action may have an important deterrent value, there is a concern that those actions are brought primarily to benefit class counsel, and awarding disproportionate class counsel fees only incentivizes that behavior. *Cy pres* awards—by ensuring that a settlement fund is sufficiently large to command a substantial attorneys' fee—can exacerbate this problem. *See Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784–85 (7th Cir. 2004); Martin H. Redish et al., *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617, 621–22, 649 (2010). Although, as noted, this class action had the potential to compensate class members significantly, the current distribution of settlement funds arguably overcompensates class counsel at the expense of the class.

We recognize the difficulty a district court faces in deciding when attorneys' fees should be reduced on this basis. In evaluating a fee award, it should begin by determining with reasonable accuracy the distribution of funds that will result from the claims process. This may require it "to delay a final assessment of the fee award to withhold all or a substantial part of the fee until the distribution process is complete." Federal Judicial Center, Manual for Complex Litigation § 21.71 (4th ed. 2008). That court should then, relying on the *Gunter/Prudential* factors and its experience, determine whether the level of distribution provided to the class by the settlement reflects a failure of class counsel to represent adequately the interests of the entire class. We note that the use of a lodestar cross-check may be helpful, although not necessarily determinative, in making

this determination.[14]  Having framed the relevant inquiry, we leave the determination of the appropriate fee award to the District Court, which is more familiar with the performance and skill of counsel, the nature and history of the litigation, and the merits of the lawsuits.

## IV.     Class Notice

After initially approving the settlement, but before giving final approval, Federal Rule of Civil Procedure 23(e)(1) requires a district court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."   Although the Rule provides broad discretion to district courts with respect to the notice's form and content, it must satisfy the requirements of due process. *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985).  Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962–63 (9th Cir. 2009); *Masters*, 473 F.3d at 438; *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 326 (3d Cir. 1998); 3 Herbert

---

[14] This case demonstrates why use of the lodestar is helpful but not outcome determinative.  As noted, the District Court calculated a lodestar of $31,839,355.33 at regular billing rates, and the fees awarded represented a negative lodestar multiplier of .37.  This suggests that class counsel would not be overpaid for their services if compensated as requested, but it also suggests that counsel has a significant financial incentive to cut its losses and settle the lawsuits.

B. Newberg et al., Newberg on Class Actions § 8:32 (4th ed. 2012).

Young contends that the settlement notice was inadequate because it did not identify the *cy pres* recipients who will receive excess settlement funds.[15] His primary concern is that unnamed class members will not have the opportunity to object to the selection of the *cy pres* recipients, who are intended to serve as proxies for the class members' interests. While a valid concern, failure to identify the *cy pres* recipients is not a due process violation. Class members know there is a possibility of a *cy pres* award and that the Court will select among recipients proposed by the parties at a later date. This knowledge is adequate to allow any interested class member to keep apprised of the *cy pres* recipient selection process. We are confident the Court will ensure the parties make their proposals publicly available and

---

[15] Young also asserts that the settlement notice fails because it indicates that a potentially valid proof of purchase—certain forms of photographic evidence—is invalid. Young became aware of that photographic evidence might be permissible at the fairness hearing several months before the District Court gave final approval to the settlement. Because he failed to raise this issue before the Court, it is waived on appeal. *Franki Found. Co. v. Alger-Rau & Assocs., Inc.*, 513 F.2d 581, 586 (3d Cir. 1975). We are unclear, however, whether photographic evidence actually is valid proof of purchase under the settlement. On remand, the Court, taking into account any changes to the settlement, should clarify the types of evidence that are valid. If that evidence materially differs from the evidence described as valid in the class notice, the Court should require that a supplemental notice be provided to the class.

will allow class members the opportunity to object before it makes a selection.[16]

The delayed naming of *cy pres* recipients presents a more nuanced issue with respect to the opportunity of class members to appeal the Court's selection of *cy pres* recipients. As the Court of Appeals for the First Circuit has recently explained,

---

[16] Courts generally require the parties to identify "a recipient whose interests reasonably approximate those being pursued by the class." ALI, Principles of the Law of Aggregate Litig. § 3.07. In this case, the Court indicated that it would select a *cy pres* recipient (from among the organizations proposed by the parties) that satisfies this standard. "[H]aving judges decide how to distribute cy pres awards both taxes judicial resources and risks creating the appearance of judicial impropriety." *In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 38 (1st Cir. 2012). The judicial role is better limited to approving *cy pres* recipients selected by the parties. While we do not decide today whether approving a settlement with the *cy pres* selection process envisioned by the parties in this case is an abuse of discretion, we join other courts and commentators in expressing our concern with district courts selecting *cy pres* recipients. *See id.* at 38–39; *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011) ("[T]he specter of judges and outside entities dealing in the distribution and solicitation of settlement money may create the appearance of impropriety."); ALI, Principles of the Law of Aggregate Litig. § 3.07(c) ("The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class.").

> [o]nly parties to a civil action may appeal from a final judgment. . . . The Supreme Court has recognized only one exception to this rule: that "nonnamed class members . . . who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening." . . . The question then becomes whether *Devlin [v. Scardelletti]*, which created an exception for unnamed class members who have objected to settlement agreements, extends to this situation in which unnamed class members have objected to a cy pres distribution.

*In re Lupron*, 677 F.3d at 29–30 (second alteration in original) (quoting and citing *Devlin v. Scardelletti*, 536 U.S. 1, 7, 14 (2002)). The First Circuit did not resolve whether class members objecting to a *cy pres* distribution are permitted to appeal without intervening, and we are unaware of any court of appeals that has done so.

Despite this uncertainty, we believe the notice provided to class members here satisfies the requirements of due process. Even without a *Devlin* exception, to the extent putative class members have a property interest in the unclaimed funds and object to the *cy pres* recipients selected, they may typically intervene in the lawsuit for purposes of appealing an eventual order directing a *cy pres* distribution. *See* Fed. R. Civ. P. 24(a)(2); *see also Devlin*, 536 U.S. at 20 (Scalia, J., dissenting) (describing the *Devlin* exception as

unnecessary because "class members will typically meet the requirements for intervention as of right under Federal Rule of Civil Procedure 24, including intervention only for the purpose of appeal, and even after the class judgment has been entered"). We believe intervention will prove sufficient to protect the interests of unnamed class members in appealing the selection of *cy pres* recipients. And if it does not, they may ask us to determine whether it is appropriate to create a new *Devlin* exception allowing them to appeal.

## V. Conclusion

We summarize our rulings.

1. We vacate the District Court's orders approving settlement and the fund allocation plan because the Court did not have the necessary factual information to determine whether the settlement will provide sufficient direct benefit to the class.

2. We vacate the Court's order awarding attorneys' fees and costs because this award was based on the now-vacated settlement. We confirm that the Court may, in its discretion, reduce attorneys' fees based on the level of direct benefit provided to the class.

3. We do not require that a corrected notice be sent to class members because we do not believe that the notice provided was inadequate. We note, however, that supplemental notice should be provided to the class if the settlement is materially altered on remand.